The next case today is Maybe Elizabeth Ramirez-Lopez et al. v. Merrick B. Garland, appeal number 21-1312. Attorney Welch, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, your honors. May it please the court, my name is Daniel T. Welch and I represent the petitioners in this case. May I reserve two minutes for rebuttal? Yes, you may. Thank you. This appeal is a result of a final order of removal that was issued by an immigration judge in Boston on March 25th, 2019. Two years later, this decision was affirmed by the Immigration Appeals Court on March 25th, 2021, both of which denied my client's applications for asylum, withholding of removal and protection under the Convention Against Torture. The immigration judge and the board determined that petitioner's testimony had some discrepancies, and that because of those discrepancies, they needed reasonably obtainable corroborating evidence to sustain her claim. Therefore, this case concerns the question of whether the corroborating evidence referred to by the immigration judge and the board was the type of evidence that would have been reasonably obtainable under the specific facts and circumstances of petitioner's case. And so in summary... At the hearing, did the IJ tell her what evidence might have been of assistance to him or her? No, Your Honor, absolutely not. That is part of my argument, is that the immigration judge just made a ruling and denied her claim without giving my client the opportunity to explain the lack of unavailability of this corroborating evidence. That's two different points. First is the point you just made, which is there should have been an inquiry perhaps as to why she did not present further evidence as she had the burden. And the second has to do with whether there's an obligation on the part of immigration judges to specify the other evidence that they thought might be helpful to her case. I'm not certain there's any law out there as to the second imposing such a duty on immigration judges. Okay. Well, let's see if I can find the case that I was referring to. According to... Let me add to Judge Lynch's comment. Even in a criminal case, I was a district judge, and in criminal cases, I can't tell the defendant what to do or what to bring. So I echo Judge Lynch's comments. In any event, Mr. Walsh, one of the things that is said in at least the appellate briefing is that she had access to medical records in the U.S. She also had extensive family in the U.S., but she produced no medical records that were consistent with her claim that she had been raped, nor did she produce any evidence from family members who had been here a long time that she had described the rape to her family. Or that they had observed the emotional impact of any rape. Now, if you were counsel for her, one would expect that that type of evidence would have been put in. In fact, you did put in such medical evidence, at least, as to the son. So why isn't it fair inference that the reason you did not put in this easily accessible evidence was that it would not have helped your case? It would have undercut your case. The reason, Your Honor, is because this evidence did not exist. The client specifically testified that she didn't tell anyone about this rape other than her aunt, who unfortunately passed away before she came to the United States. Was there medical records from the United States? No, Your Honor, there was not. The immigration judge thought that if this rape was real or if she was going to give her the credence, she thought that there would be some sort of mention of this rape in either the medical records from her birth of her child in Guatemala or medical records from her five years in the United States. They didn't exist because the client never told anyone she was raped other than her aunt, who had passed away. I'm sorry. As to the second point, you don't have to say you're raped for there to be medical records that you are suffering from depression or whatever. That's true, Your Honor. And you have to agree, I think, that she did have inconsistent stories. Yes, Your Honor, she did have somewhat. There were some discrepancies, but we have an expert declaration, which was not considered by the board. It wasn't even mentioned by the board or the immigration judge that specifically talk about the memory problems, especially in young victims of violent crimes or violent sexual assaults just like this. The discrepancies were very, in my opinion at least, were very minor. They didn't go to the heart of her claim, which was I was raped by gang members. I'm trying to pin down if there are medical records in existence for her, because a lot of immigrants don't go to the doctor. Correct, Your Honor. My understanding is that she did give birth to her son in Guatemala, so I assume that there is at least records of that. But here in the United States, I'm not aware of any medical records whatsoever. None of going to the doctor, seeing a therapist, nothing like that. But Mr. West, this is your client. Wouldn't you have asked your client? Of course, Your Honor. I was not the trial attorney in this case, so I don't know if that discussion occurred. I guess I should have asked the trial attorney. But you haven't talked to her to find out? Well, she was never given the opportunity, Your Honor, to have a continuance and maybe seek this medical evidence if it existed. Counsel, I'm with Judge Thompson on this. No, she needs a continuance for her lawyer, who knows that she has the burden of establishing eligibility for asylum, whether she received any medical care in this country. No, that's not the way it should be. Or Guatemala. Because the record says that she didn't call the police because the nearest police was two hours away from her home. So my assumption is that she lived in a small village there. Correct. That's correct. In San Marcos. And so you don't even know if she had access to medical care. She may have given birth at home. We don't know. But you should know. That's true, Your Honor. At this point, I felt like it has no bearing on this case, that that would be something that needed to be addressed at the trial court. But now that we have the record that we have, I just didn't see how that would be helpful, whether or not medical records existed. My understanding is that there are no medical records, and I have to work with the record that I have in front of me. No, that's an assumption on your part. We all have to work with the record that we have. Really, the question for us in reviewing the BIA is whether we could say no reasonable adjudicator could have found the way they did. We owe them deference on the fact-finding. So what do we do with that? How does your client possibly establish her claim given the record? Of course. Okay. So my thought is that the immigration judge and the board misapplied the law by focusing narrowly on only parts of the record that supported their decision and failing to consider other parts of the record that supported petitioner's claim, which we had country conditions reports and expert declarations. I'm sorry. Did they say explicitly they didn't consider those parts of the record, or are you just assuming because they didn't discuss them that they didn't consider them? Throughout the transcripts, as well as the immigration judge's opinion and the board's opinion, there was no mention of any of it. Okay. That's a different matter. We do not assume from lack of mention that they do not review the full record. Okay. Any further questions from my colleagues? Yes, I have two questions. You mentioned that you had some expert declarations that were not considered. Not you, counsel. But I don't see in the appellate brief that is not an issue that is raised. Expert declarations were suppressed or precluded from being presented, and they're not proffered, or I think they're not even part of the record. Am I correct? If you look at our brief, we do cite to it. We made a mistake and cited page 415 of the brief, but it was actually page 416 of the brief. I'm sorry, that's not the question. Are there expert reports in the record that were submitted to the immigration judge? Absolutely, Your Honor. Yes, there were two expert declarations that were submitted to the immigration judge. They can be found on page 413 of the record. Okay, but where in the brief do you argue that this was an error? Because it's not one of the principal errors. I'm trying to look in your brief. If somewhere there… It goes to the argument that in seeking corroborating evidence, the reason why the immigration judge and the board were seeking corroborating evidence is because they did not consider other corroborating evidence. So maybe it wasn't spelled out as well as it should have been in our brief, but that's the argument I'm trying to make today. Let me ask you my last question. One of the issues is the immigration judge weighed credibility, the weight of the evidence. It seems to me that you're asking us to make a de novo credibility weight of the evidence determination, which we can't. Am I incorrect in that? The immigration judge did not find the client incredible. She did not make an adverse credibility finding. She said that there was discrepancies, and because of those discrepancies, she needed reasonably obtainable corroborating evidence. That evidence did not exist, and it was air for the judge to request that evidence given the record and the testimony by the client that she did not tell anyone about her rape other than her aunt. We had expert declarations and country conditions that support that claim that women do not tell… …of whether she was raped. She asserted she didn't know who raped her. It was a gang rape, and then she says, and then I went to the family of my rapist and said, he was the guy who raped me, and therefore, she ought to get payments from his family to raise the child. What do you do with that? That was the first affidavit, which was amended, and in the second affidavit, it makes no mention of that. That may be, but that's what she said. Correct, Your Honor. That's what creates the discrepancy. There's still discrepancies there. At trial, she was cross-examined on this matter specifically, and she told the DHS attorney that it must have been confusion or miscommunication that she did not go to the father's family because she didn't know who the father was, that she actually went to her mother's brother, which was her uncle, and that he was the one that refused to help her because of the child's medical problem. That's quite a difference. It is, Your Honor, but I would just point out that this is a very undereducated client. They don't have the best communication skills, and we're using interpreters that have different dialects or from different countries, and so this, unfortunately, Your Honor, this type of thing happens somewhat often, miscommunications and misunderstandings. Counsel, one last thing. I'm looking at the IJ's opinion. It's on page 5, but she specifically says the court has serious doubts about the credibility of the testimony, and she addresses them below. I don't know if you have anything to add to that. If not, I have no further questions. That is correct, Your Honor, but there is at least one or two mentions in her decision that she is not going to issue an adverse credibility finding. But, yes, she said that there are serious doubts with the testimony and that she cannot give it full faith and credit without corroborating evidence. And that goes then to the burden of proof, correct? Correct. Okay, thank you. Thank you. I'm finished. Thank you, Counsel. Thank you. At this time... Didn't he reserve a couple minutes? Yes, in rebuttal. Okay. Thank you. Thank you. If you could mute your camera and your audio now, and Attorney Browning, if you could unmute your audio and your video and introduce yourself on the record to begin. May it please the court, my name is Rachel Browning, and I represent the Attorney General Merrick Garland, the respondent. The ultimate question before this court is whether any reasonable adjudicator would be compelled to conclude on this evidentiary record, contrary to the agency, that the petitioner met her burden of proof for the relief requested. And we submit that on this record, it does not compel such a conclusion, and we would ask that you deny the petition for review. Ms. Browning, you know, we do a lot of these cases, so we're well aware of the argument. But it is plausible. Her story is plausible. She's raped, she's embarrassed about it, she's suffering from trauma, she chooses not to talk to anyone except for her aunt, and she doesn't... ...accept anyone because she didn't report it to the police. It is plausible. And I can understand that the immigration system should not be required to provide asylum merely because a story is plausible in the absence of something further. So, could you kind of respond to that concern on my part? Well, I appreciate Your Honor's concern, particularly given the age of the petitioner at the time of the rape, and at the time that she came into the country. But still, the question isn't whether it's plausible that she's met the burden of proof, but whether the record compels such a conclusion. And when you look at the aforementioned discrepancies between her affidavits and her failure really to explain those discrepancies before the court, what the judge is left with is a very vague record regarding what happened or why. And what the board said in matter of LAC with respect to corroboration. Well, what do you mean by that? What do you mean by what happened or why? What's the why part of that? Why does someone rape somebody? What's that? Why does somebody rape somebody if that's what happened? Well, I appreciate that, Your Honor, but what I'm saying is for the burden of proof or asylum, there has to be protected ground at issue, which the board, which the judge didn't get to because there was simply not enough corroboration of exactly what happened. She didn't know who her attacker was. Yes, thank you. That helps. So there's just too many vague, there's the, the elements simply weren't there based on what she said. So there needed to be further corroboration. That's all I meant to say by that. That she didn't show she was harmed, much less that it was on account of one of the protected grounds. Of course, you know, our court has a lot of case law on domestic violence. But I take it you would say we don't have to go anywhere close to that case law to resolve this case. Yes, Your Honor, because I don't even think it's, I mean, based on what she said, I'm not sure this would even qualify as domestic violence, since she was not in a relationship with any of these men. But what I was, what I was going to point out prior to this, in matter of LAC, speaking of corroboration, what the board said was that the Real ID Act, in effect, provides any applicant notice that they will be expected, they may be expected to provide corroboration regardless of their credibility. But that does not require a judge to specify what exactly is needed. Because to do that, you would then basically have to issue someone a continuance every time, like if you, you know, judges issue a call-up date by which a petitioner or by which the applicant should provide their application and any supporting documents. In the middle of proceeding, if the IJ is sitting there thinking, this is a little shaky, I need some corroboration, is it too much to say that the IJ can ask if there is any corroborating evidence in existence? To presuppose that there are medical records, to presuppose that the child was born at a hospital or medical facility rather than home, it's a lot of, you know, assumptions. But I think the assumptions were well-grounded, as one of the judges pointed out. In fact, she did provide medical documents when it came to her son, and she herself brought up the issue of the trauma by asserting that the reason she waited three years to file her application was because of this trauma. And in fact, the judge pointed out to counsel, if you look on page 146 of the record, he noted that the expert affidavits provided only spoke generally. If you look at the affidavits themselves, they speak to the general conditions of violence in Guatemala and generally how victims of trauma respond and why they may not feel compelled to discuss that trauma. And the judge asked counsel, do you have anything specific to the petitioner? And counsel said no. So I think it's fair for the judge to be concerned about the lack of further corroboration when everything is sort of general and speculative. And in fact, in her appeal to the board, petitioner did not argue that she lacked sufficient notice to provide the evidence. She just she drilled down on the idea that it just doesn't exist. It's not there. And the judge should have not should not have relied on these discrepancies because she was confused and a minor and maybe it was mistranslated. So this was with a very vague record. If there was evidence or if there was additional explanation, she could have provided it to the board after which the board, if he felt if the board felt it was necessary to further determine the case, could have sent the case back. But with the board left with simply, I didn't tell anybody. And so there's no evidence. And you have discrepant testimony. Her burden of proof simply wasn't met. You say she waited three years to file for asylum. Was there some triggering event that led to the asylum application? I believe it was her the initiation of removal proceedings itself. I can't remember how exactly she came to the attention of the authorities, but it wasn't until she was in asylum proceedings that she indicated she would be filing for asylum. And the judge noted to counsel again that this is a late filed application. You're going to need to address that in your memorandum. Counsel provided a memorandum of law, but the memorandum was basically more arguments of counsel that, you know, oh, well, it's possible. She didn't tell anybody because of the trauma, but there was no evidence. There was nothing. There were no medical records, nothing indicating she had spoken to a counselor or anybody, you know, that will provide additional documentation of what happened to her and why and how it has affected her. And that's I think that's a reasonable expectation when you're asking for a benefit from the government. And, you know, based on this, there's got to be something in the record for a judge to go on, particularly where testimony is weak. This court has consistently said that the weaker the testimony, the more important the need for corroborating evidence. Is it fair to assume that this case has not gone through our mediation program? It is not, Your Honor. I have not been approached about mediation, so I don't I can't really speak to that. OK. Counsel, let me ask a question, and this is towards the end of your brief, but you make a statement. It's in a footnote that in regards that petitioner claims that her aggressors enjoy impunity and rape is not prosecuted in Guatemala. What do you have to say about that? Does that regarding the border expert testimony, anything at all? I'm sorry, Your Honor, could you tell me where that footnote is so I can look at it in my brief? Page 23 of your brief, footnote two. Because there's been mentioned by opposing counsel and you about some expert testimony and there were experts talking about the conditions in Guatemala. So is there anything you could clarify a little bit about that? Well, I was simply responding to, first of all, we maintain that the issues of the timeliness and protection of the Convention against Torture are unexhausted. They were not raised to the BIA. The court lacks jurisdiction to review them. I was merely responding to the evidence petitioner cited in support of their cat claim, and it's not I don't think it's what they meant to cite to. It didn't really it wasn't clear what they were referring to because it didn't match up with my record. And that's all I was pointing out. And I mean, you know, to the extent that they do rely on country conditions evidence, that's simply not enough to to say that petitioner more likely than not is going to face torture by or with the acquiescence of the Guatemalan government. OK, Miss Brown, I just have one more and please take this question seriously. Do you do you and Mr. Walsh talk at all before these hearings? We typically do not speak with opposing counsel unless opposing counsel brings something to our attention. You know, if if a case is going to argument, we presume that there are legal issues that the court wants to grapple with that are independent of any other type of relief outside of the court that that a petitioner might be eligible for or warrant as an act of discretion. I will say that our office has been extremely busy with lots and lots of requests from every court and we do our best to to respond and work with with counsel as much as we can. It's been very difficult to do that in the last year or so, in part because of the change of administration, in part because of the pandemic. And but that is something we do. But it usually it's if it's brought to our attention, we'll or if the court, sometimes the courts themselves will say this case might warrant mediation or or something like that. So I hope that answers your formal request from counsel to try to resolve this outside of the court. Not not at this time. Correct. Right now. To entertain. So if hypothetically speaking, petitioner wants some sort of outside relief, the proper protocol is to go directly to DHS who, you know, who have jurisdiction over or who are working in the in the local office where the case was originally adjudicated and to speak with those counsel. They are because they are in the position to exercise prosecutorial discretion for any number of reasons. And so that's that's what we usually direct petitioners to do if they bring they bring these things to our attention. Thank you, Miss Brown. You don't know how tremendously helpful that answer was to us. Oh, well, I appreciate it. You're speaking for my own experience. Thank you, Miss Browning. It's been very helpful. Thank you. Welcome. Thank you, Your Honors. That's time. Attorney Browning, you can please mute your audio and video at this time. Attorney Welch, when you please unmute your audio and video. And when you're about when you're ready to begin, please reintroduce yourself on the record. Thank you, Daniel T. Welch, on behalf of the petitioners. I just wanted to point out to your honors that the proceedings were initiated at the border in 2013 when petitioners they were caught at the border. So it wasn't it wasn't something else initiated removal proceedings. She was caught at the border. The reason why she didn't file an asylum application for three years is because it looks like she did not have the money to pay an attorney and didn't know how to go about it. There is a letter at page 502 of the record from the law firm of Mora and Mora on October 23rd, 2014. They indicate that petitioner attempted to hire them to go to one of her hearings with her. But when I looked at the transcripts of the proceedings, it was always pro se until our firm was involved in 2016. So she wasn't caught later when she came to the country. She was caught at the border. The NTA had been filed. But counsel, she has a lot of family here, right? And nonetheless, she waits three years, whether it's a matter of hiring counsel or not. She came into a community of relatives here and apparently turned to no one for help. Is there something else you would like to say to us? I guess I just would like to point out one one case and then that's it. But it's called Chuck Wu versus Attorney General. It's a Third Circuit case from 2007. And it just says that at the merits hearing in circumstances where the immigration judge determines that specific corroborating evidence should have been submitted. The applicant should be given an opportunity to explain why he or she could not reasonably obtain such evidence. The immigration judge must also ensure that the applicant's explanation is included in the record. That's all. Thank you. Are there any further questions from my colleagues? No. All right. Thank you very much. Thank you. That concludes argument in this case. Attorney Welch and Attorney Browning, you should disconnect from the hearing at this time.